**In re Nicholas BATT, Debtor.**

**Nicholas Batt, Plaintiff,**

v.

**American Rent–All, Defendant.**

No. 04–3423.

United States Bankruptcy Court,
N.D. Ohio.

March 7, 2005.

Nicholas Dreher Batt, Holland, OH, pro se.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint for Violation of the Automatic Stay as set forth in 11 U.S.C. § 362(a). In his complaint, the Plaintiff seeks that the "Defendant be enjoined from any further action to collect the sums claimed due." (Doc.

No. 1). Present at the Trial were the Plaintiff, representing himself, and Phillip Dombey, as attorney for the Defendant. During the course of the Trial, the Plaintiff moved and this Court granted a request by the Plaintiff that he be allowed to amend his pleadings under Bankruptcy Rule 7015(b) so as to request an additional form of relief; to wit: the Turnover of funds paid to the Defendant postpetition.

From the Trial held on this matter, the Court, in accordance with Bankruptcy Rule 7052, makes the following factual findings:

As security for the rental of certain equipment, the Plaintiff/Debtor, on a prepetition basis, tendered to the Defendant a blank check. According to the Defendant, this is a standard business practice. The check was presumably signed by the Plaintiff, but not presented into evidence.

After renting the equipment, this check was presented for payment, with the Defendant filling in an amount of $800.00. The bank/drawee, however, refused to honor the check because of insufficient funds.

After these events, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Regarding the previously dishonored check, the Defendant then sent to the Plaintiff a 'notice of dishonor.' Although the entire contents of this 'notice of dishonor' are not known to the Court, not having been presented as evidence, the Defendant acknowledges that the notice imparted that the matter may be turned over to the county prosecutor for a review of potential criminal violations.

After receiving the 'notice of dishonor,' the Plaintiff 'made good' on his check by tendering to the Defendant the sum of $810.00. As of yet, no criminal charges have been filed against the Plaintiff.

## DISCUSSION

Before this Court is the matter of whether the Defendant violated the automatic stay of 11 U.S.C. § 362(a), and whether the Plaintiff is entitled to an order for turnover. Determinations concerning both these matters are deemed core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157. The Court begins its analysis with the applicability of the automatic stay.

The Plaintiff's Complaint for violation of the stay centers on the subject matter contained in the "notice of dishonor" sent to him by the Defendant—that his dishonored check would be turned over to the county prosecutor for the potential review of charges under O.R.C. § 2313.11, which makes it a fifth degree felony to fraudulently issue a check for over $500.00 in value. As taken from both the language of his complaint, and from his arguments at the Trial, the Plaintiff seeks as his sole remedy to enjoin the Defendant from taking any type of action which could result in the commencement or continuation of a criminal proceedings against him.

Generally stated, the automatic stay stops all collection activities related to the recovery of a prepetition debt against the debtor. 11 U.S.C. § 362(a). Injunctive relief is available to prevent a party from prospectively taking an action that would be in violation of the stay. 11 U.S.C. § 105(a). The scope of the automatic stay is very broad and will encompass, as in this matter, letters sent to a debtor concerning the payment/collection of a prepetition debt. *Elsinore Shore Associates v. New Jersey Division of Alcoholic Beverage Control*, 66 B.R. 708, 715 (Bankr.D.N.J.1986). By its terms, howev-

er, the automatic stay does not apply to a criminal prosecution. As set forth in 11 U.S.C. § 362(b)(1):

> The filing of a petition ... does not operate as a stay-
>
> > (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]

This section is self-executing. *In re Prudential Lines, Inc.*, 69 B.R. 439, 450 (Bankr.S.D.N.Y.1987).

■ Actions taken, however, under the guise of a criminal prosecution, but having as their true motive the collection of a debt, are a different matter: it is well established that a creditor, the government included, is not permitted to employ the criminal judicial process as a means to collect a debt. As was previously explained by this Court:

> The exception to the automatic stay for criminal actions or proceedings is not without limitation. It is well established that a creditor is not permitted to utilize a criminal prosecution as a means of avoiding the automatic and injunctive stay provisions of the Bankruptcy Code in an effort to continue to collect on a claim owed by the debtor.
>
> It therefore is incumbent upon this Court to make inquiry and determine from the facts and circumstances presented, if a creditor is seeking to utilize the criminal process as a means of extracting a preference not accorded other creditors similarly situated. On the other hand, if a creditor's actions are nothing more than aiding and assisting the prosecuting authorities in their rightful duties in protecting society by punishment for violation of the criminal laws, then such is obviously what Congress

intended by enacting 11 U.S.C. § 362(b)(1).

*Williamson–Blackmon v. Kimbrell's of Sanford, North Carolina, Inc.*, 145 B.R. 18, 21 (Bankr.N.D.Ohio 1992) (internal quotation and citation omitted).

Of course, when, as here, the issuance of a bad check is at issue, ascertaining a single motive is extremely difficult; a creditor's motive is likely to be mixed by both a desire to punish the debtor as well as by a desire to collect on its debt. In fact, and as is the case in Ohio, such an entanglement is often inherent in the nature of the penalty associated with criminally passing a bad check: restitution to the payee on the check.[1]

■ In a situation potentially involving a mixed motive, deference must be given to the strong policy consideration underlying the adoption of § 362(b): that bankruptcy is to protect those in financial, not moral difficulty, and therefore bankruptcy is in no way to be used as "a haven for criminals." *Weaver v. City of Knoxville (In re Thomas)*, 179 B.R. 523, 529 (Bankr. E.D.Tenn.1995), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6299. It follows then, that so long as the creditor's primary motive is not the collection of a debt, but instead encompasses a true desire to see to it that the debtor is punished from violating the applicable criminal laws, no stay violation will exist for a creditor simply bringing the transgression to the attention and then cooperating with the person or agency charged with enforcing the criminal laws of the jurisdiction. *Accord In re Lake*, 11 B.R. 202 (Bankr. S.D.Ohio 1981) (injunction proper where a criminal proceedings is commenced for solely the reason to collect bad check debt). *See also Gruntz v. County of Los*

---

1. O.R.C. § 2929.18(A)(1).

*Angeles,* 202 F.3d 1074, 1084–85 (9th Cir. 2000) (automatic stay does not enjoin state criminal prosecutions, even if underlying purpose of the criminal proceedings is debt collection).

■ While ascertaining a creditor's underlying motive is obviously a factually intensive inquiry, helpful considerations may include whether it is the creditor's standard procedure to initiate criminal proceedings and the time-line of the surrounding events. Still, the burden of putting forth evidence regarding motive falls upon the debtor. That is, when a debtor is involved in the commencement or continuation of a criminal matter, the burden falls upon him to establish the inapplicability of § 362(b)(1)'s exception to the stay. *In re Taylor,* 16 B.R. 323, (Bankr.D.Md.1981), *rev'd on other grounds,* 44 B.R. 548 (D.Md. 1984).

■ In this matter, however, the Plaintiff did not present any evidence to the Court concerning the Defendant's motive in seeking to prosecute him for passing a bad check. Noteworthy, the "notice of deficiency" letter was not put into evidence; nor did any person with first-hand knowledge offer any testimony. To the contrary, the only statement made to the Court concerning the Defendant's motive occurred at the PreTrial held in this matter, whereat a representative from the Defendant commented that they seek to prosecute all parties who pass bad checks. Also, the Parties do not disagree that, except for the single "notice of dishonor" sent by the Defendant, no further contact regarding the collection of its debt was initiated against the Plaintiff. Therefore, as this Court has absolutely no evidence before it upon which it may be inferred that the Defendant had an improper motive in seeking to criminally prosecute the Plaintiff, § 362(b)(1) permits any activities involving such prosecution to continue unabated.

■ Notwithstanding, the Plaintiff also seeks the turnover of the $810.00 he paid to the Defendant postpetition to satisfy the "bad check." In doing so, the Plaintiff argues that such monies should be turned over because they were for the payment of a prepetition dischargeable debt. The difficulty, however, with this position is twofold:

■ First, the funds used to pay the debt, having come from postpetition assets, are not property of the estate. Hence, there exists a serious question as to whether this Court has jurisdiction over these funds. Second, bankruptcy law does not prohibit the voluntary repayment of a prepetition debt by a debtor, but rather only prohibits a creditor from taking action against the debtor to collect the debt as a personal liability. 11 U.S.C. § 524(a)/(f). And here, based upon this Court's prior discussion, the Plaintiff's actions are clearly more akin to a voluntary payment. Based, therefore, on these considerations, the Court declines to grant the Plaintiff's request for turnover.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that this Complaint, be, and is hereby, DISMISSED.